


**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

HUGH TITO,

Plaintiff,

v. Civil Action No. 3:14cv453

THE HONORABLE CHUCK HAGEL,

Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Ashton Carter's ("Defendant") MOTION FOR SUMMARY JUDGMENT (Docket No. 44).[1] For the reasons set forth below, the motion will be granted.

## BACKGROUND

The Complaint is rambling and confusing because of its inordinate recitation of detail. Nonetheless, it is possible accurately to summarize the factual allegations and the claims.

---

[1] Chuck Hagel was the Secretary of the Department of Defense at the time the Complaint was filed. However, he has since been replaced by Ashton Carter. The Defendant filed a Notice of Substitution to change the caption of the case. Docket No. 42. The term "Defendant" will be used rather than the name "Carter."

## I. Factual Background

The facts are set out by drawing all permissible inferences in favor of the Plaintiff, except where the record admits of no favorable inference.

### A. Application and Interview for Vacant Position

Hugh Tito ("Tito") is employed by the Defense Logistics Agency ("DLA"), a component of the Department of Defense. His first claim is based on the fact that he was not selected for a particular position in DLA.

The pertinent facts of record on that claim are as follows. On January 11, 2010, DLA began accepting applications for the position of Bearings Division Chief. Docket No. 45 at 1. Thirteen people applied for the position, including Tito and Carl Allen ("Allen"). DLA formed a three person panel to conduct the first round of interviews and select the top three or four applicants. Id. at 1-2.

In the interviews, the panel asked each of the candidates the same six questions and considered the candidates' resumes. After conducting the first round of interviews, the panel identified four top candidates, including Allen and Tito. Docket No. 45-2 at ¶ 8; Docket No. 45-3 at ¶¶ 7-8. Although the panel did not officially rank the candidates, they each concluded that Allen was the most qualified candidate for the job. Docket No. 45-3 at ¶¶ 9, 12; Docket No. 45-4 at ¶ 9; Docket No. 45-5 at ¶ 8.

Don Love ("Love"), the official tasked with the final selection of the Bearings Division Chief, interviewed each of the finalists. Docket No. 45 at 2. Love asked the four candidates the same four questions. Docket No. 45-2 at ¶¶ 2, 3, 8. After the interviews, Love considered Tito and Allen to be the top two applicants based on their applications and interviews. Docket No. 45 at 3.

In making his final decision, Love noted that Allen had nearly a year and a half more supervisory experience than Tito, and that Allen had a graduate degree and that Tito had a Lean Six Sigma Black Belt. Id. Love also noted that Tito was a strong candidate who was organized, and he highlighted Allen's communication skills and positivity. Id.

Love then spoke to employees who worked with Tito and Allen. He received uniformly positive comments about Allen, but mixed feedback on Tito. Docket No. 45-2 at ¶ 11.

Based on the interviews, the applications and his discussions with others about the candidates, Love decided to select Allen for the position. He testified at his deposition that he did not consider age during the interviews or during the selection process. Docket No. 45-2 at ¶ 19. There is no evidence in the record to the contrary.

Captain Michelle Skubic approved Love's selection. Kathy Cutler, the Deputy Commander, and an EEO reviewer reviewed the selection. Docket No. 45 at 4.

Love's selection of Allen for the position became final on February 12, 2010. Love thereafter met with each of the candidates not selected, including Tito in March 2010. Id. at 4-5.

**B. Temporary Position and Pay Issue**

Tito's next claim is a discriminatory pay claim of sorts. The pertinent facts of record respecting that claim are as follows.

Tito temporarily served in a position involving a higher degree of job responsibility from August 4 through December 9, 2009 and from January 11 through March 27, 2010. Docket No. 1 at 3; Docket No. 45 at 5. That, however, was not a "temporary promotion" because Tito's permanent and temporary positions were in the same pay band. Docket No. 45 at 5; Docket No. 45-2 at ¶ 18; Docket No. 45-6 at ¶¶ 5-8.

At the time, DLA operated under the National Security Personnel System ("NSPS") that allowed for a discretionary pay increase of up to 5% for temporary reassignments. Docket No. 45 at 5. In recognition of Tito's increased responsibilities in the temporary position, DLA gave him a 5% pay increase for the four month period between August 4 and December 9, 2010 and arranged for a Special Act Service Award of $3,000 in March 2010. Docket No. 45-2 ¶ 18; Docket No. 45-6 at ¶¶ 8-9. Tito claims that DLA failed to fairly compensate

him for two of the four months between August 4 and December 9 and the 2.5 months between January 11 and March 27, 2010.

### C. EEO Complaint

On April 30, 2010, Tito filed a formal complaint of discrimination pursuant to the Age Discrimination in Employment Act of 1967[2] in which he alleged age discrimination based on a failure to promote and failure to adequately compensate. Docket No. 45-1.

After filing the complaint with the Equal Employment Opportunity Commission ("EEOC"), Tito's claims were heard by an EEOC Administrative Judge on May 8, 2012. See Docket No. 45-8 at 2. On June 25, 2012, the Administrative Judge issued a decision in favor of DLA. Docket No. 55-7. Tito appealed the Administrative Judge's decision on August 8, 2012. See Docket No. 45-8 at 1. On March 27, 2014, the appeals panel affirmed the Administrative Judge's decision. Id.

## II. Procedural Background

Proceeding *pro se*, Tito filed the Complaint in this action. Docket No. 1. While unorganized, the Complaint pleads three counts against Defendant. Id. at 2-3. Tito alleges age discrimination under the ADEA and retaliation for filing an EEOC complaint under Title VII. Id. at 1.

---

[2] 29 U.S.C. § 621 *et seq.*

For ease of discussion, the Court refers to Tito's claims as Counts I, II, and III. In Count I, Tito alleges that DLA discriminated against him on account of age by failing to select him for a promotion. Id. at 3. In Count II, Tito alleges that DLA discriminated against him on account of age by failing to compensate him at a higher pay grade for a period of six and a half months. Id. In Count III, Tito alleges that DLA retaliated against him on "several" occasions for filing an EEOC case.[3] Id. at 3.

Defendant initially moved to strike the Complaint. Docket No. 9. The Court granted that motion in part and denied it in part. Docket No. 20. The motion was granted insofar as to strike Paragraphs 7 through 126 of the Complaint. Id. However, all original claims survived the motion.

After the conclusion of discovery, the Defendant filed the pending Motion for Summary Judgment. Tito has responded in opposition, and the Defendant has replied. The matter is now ripe for decision.

---

[3] Because there appeared to be a significant issue as to subject matter jurisdiction over the retaliation claim, the Court ordered further briefing on the issue. On November 9, 2015, Tito withdrew all retaliation claims (Docket No. 57). Those claims will not be addressed further and will be dismissed with prejudice for lack of subject matter jurisdiction that cannot be cured because the time for filing a predicate claim with the EEOC has passed.

**DISCUSSION**

**I. Summary Judgment Standard**

Under Fed. R. Civ. P. 56, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In Celotex Corp. v. Catrett, the Supreme Court stated that Rule 56(c) requires the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." 417 U.S. 317, 322 (1986). In order to enter summary judgment "there can be no genuine issue as to any material fact, since a complete failure to proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Id. at 323.

When reviewing a motion for summary judgment, a court must interpret the facts and any inferences drawn therefrom in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Seabulk Offshore, Ltd. V. Am. Home. Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004). In order to successfully oppose a motion for summary judgment, the

nonmoving party must demonstrate to the court that there are specific facts that would create a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "Where...the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

**II. Burden Shifting Analysis Applies**

There are two ways in which Tito can respond to summary judgment on the discrimination claims. First, he can "present[] direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race [or sex, color, or disability] motivated the employer's adverse employment action." Diamond v. Colonial life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). Otherwise, he can proceed under the McDonnell Douglas burden shifting framework. McDonnell Douglas v. Green, 411 U.S. 792, 802-05 (1973).

Tito has not presented any direct or circumstantial evidence of discrimination on account of his age. Thus, he must proceed under the McDonnell Douglas burden shifting framework. In McDonnell Douglas, the Supreme Court established a burden-shifting scheme for Title VII claims that first requires a plaintiff to make a *prima facie* showing of discrimination. Id. at 802. The specific elements of

this *prima facie* case will vary with the type of claim being asserted. If the plaintiff is able to meet this standard, the evidentiary burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its challenged employment action. Id. If the employer is able to meet that standard, the burden shifts back to the plaintiff to prove that the employer's proffered explanation for the adverse employment action was pre-textual. Id. That is the framework that governs the analysis of this summary judgment motion.

**III. Count I: Failure to Promote**

**A. *Prima Facie* Case**

To establish a *prima facie* case for his failure to promote claim, Tito must show that: (1) he is a member of a protected class; (2) he applied for a vacant position; (3) he was not selected for the position despite being qualified; and (4) the employer filled the position with a similarly qualified, but substantially younger candidate. Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006).

Tito has established a *prima facie* case for the failure to promote claim. First, Tito is a member of a protected class because the ADEA protects, inter alia, federal employees who are over the age of 40. 28 U.S.C. § 633a. Tito was born in 1958 making him over the age of 40 when he was not selected for the position. Second, there was a vacant position at DLA for which he applied. Third, Tito has presented evidence, and DLA has conceded, that he was qualified

for the position. Finally, DLA did not select him for the position, instead offerin`g the role to Allen, who is 16 years younger than Tito.

The burden shifts to the Defendant to proffer a legitimate nondiscriminatory reason for not promoting Tito. Laber v. Harvey, 438 F.3d at 430 (citing Reeves v. Sanderson Plumbing Prods. Inc., 539 U.S. 90, 101-02 (2003)).

**B. Defendant's Legitimate Nondiscriminatory Reason**

Here, DLA identified a legitimate non-discriminatory reason for not selecting Tito for the position of Bearings Chief by showing that Allen was the most qualified applicant for the position and that, therefore, was the reason that Tito was not selected. Indeed, the undisputed record contains convincing evidence that Allen was the standout candidate throughout the interview process.

First, the panel of officials who reviewed applications and conducted initial interviews each came to the conclusion that Allen was the most qualified candidate. Docket No. 45-3 at ¶¶ 9, 12; Docket No. 45-4 at ¶¶ 9; Docket No. 45-5 at ¶ 8. Tito does not believe that the three panel member discriminated against him. Docket No. 45-9 at 54:18-20.

Love, the official charged with selecting the new Bearings Division Chief, took notes during the final interviews with Allen and Tito. These notes show that Love thought that both candidates

were strong, but believed that Allen was more qualified. For example, he noted: that Allen had more supervisory experience than Tito; that Allen had a graduate degree; that Allen "appears effective in variety of settings with all levels" while Tito's "style does not resonate with some." Docket No. 45-2 at ¶¶ 8-10; Attachments A and B therein. These notes demonstrate that Love believed that Allen was the most qualified applicant during the interview process.

Moreover, Love spoke to several people who had worked with Tito and Allen, respectively. The people who had worked with Allen gave only positive recommendations, confirming Love's high assessment of Allen. Those who had worked with Tito gave mixed reviews, solidifying Love's conclusion that Allen was more qualified for the position. Docket No. 45-2 at ¶¶ 11-13.

Clearly, on this record, the Defendant has established that DLA had a legitimate non-discriminatory reason for not choosing Tito for the position of Bearings Division Chief: It selected the best qualified candidate. Indeed, the record would permit no other conclusion.

**C. Pretext**

Under the McDonnell Douglas burden shifting scheme, Tito had the opportunity to rebut DLA's legitimate non-discriminatory reason for not selecting him as the Bearings Division Chief by showing that DLA's proffered reason was pre-textual. Tito has failed to show

that, between his age and DLA's explanation, his age was the more likely reason for DLA not promoting him. When assertions of job qualifications are similar or slightly superior to the selected candidate "the promotion decision remains vested in the sound business judgment of the employer." Heiko v. Colombo Sav. Bank F.S.B., 434 F.3d 249, 258 (4th Cir. 2006). Tito's assertions of pretext are his own qualifications and his views of Allen's shortcomings, neither of which he establishes pretext.

Tito also tries to establish pretext by arguing that his meeting with Love a month after Love had made the selection is evidence of age discrimination because Love mentioned retirement. Love does not remember discussing retirement with Tito. Docket No. 45-2 ¶¶ 14-15. Even assuming that Love made the statement, "[A] statement about retirement is not direct evidence of age discrimination," especially since the statement was made a month after the selection and it was in a supportive context. Stephens v. Gutierrez, 2010 WL 1005189 at *6 (E.D. Va 2010). Nor is such a statement standing alone sufficient to create a jury issue as to whether the employer's proffered legitimate reason was pre-textual.

In sum, the undisputed evidence shows that DLA treated Tito the same as the other candidates and carefully considered the qualifications of each candidate in a fair way. Tito has not proffered any evidence, other than his own speculation, that age was

a factor in Love's decision to select Allen over Tito. Accordingly, summary judgment will be granted on Tito's failure to select claim.

## III. Count II: Failure to Temporarily Increase Salary

### A. *Prima Facie* Case

To establish a *prima facie* case for the non-payment claim, Tito must show that: (1) he is a member of a protected class; (2) he had satisfactory job performance; (3) there was an adverse employment action; and (4) "similarly situated employees outside of the protected class received more favorable treatment." Gerner v. County of Chesterfield, Virginia, 674 F.3d 264, 266 (4th Cir. 2012).

Tito has shown that he is a member of a protected class and that his job performance had been satisfactory, but there is no evidence that the failure temporarily to increase his salary was an adverse employment action. The record is clear that Tito's temporary position included increased responsibility, but the record also shows that the position was in the same pay band as Tito's then current position and that DLA was not required, under the NSPS, to increase an employee's salary for a temporary reassignment within the same pay band. Docket No. 45 at 5. What is more, DLA gave Tito a discretionary $3,000 Special Service Award in March 2010, thereby recognizing him for his increased responsibilities in the temporary position. Docket No. 45-2 at ¶ 18; Docket No. 45-6 at ¶ 9.

Although DLA was not required to raise Tito's pay, it could have done so temporarily by 5%. Had DLA authorized a temporary 5% increase in Tito's salary temporarily, he would have received $1,875 in additional compensation, less than the amount of the discretionary $3,000 Special Service Award. Docket No. 45 at 20. On those facts there clearly was not an adverse employment action.

Nor is there evidence that other similarly situated employees outside of the protected class were treated more favorably than Tito. Thus, he fails that part of the test as well.

**B. Defendant's Legitimate Nondiscriminatory Reason**

Assuming *arguendo* that Tito had established a *prima facie* case (which he did not), the Defendant had a legitimate nondiscriminatory reason for not increasing Tito's salary and for not paying the Special Service Award earlier than it did.

It is undisputed that Tito's permanent and temporary positions were within the same band width. Thus, no pay increase was appropriate. In early 2010, white Tito was still acting in the temporary position, DLA HR was in the middle of converting the compensation system from NSPS to General Schedule ("GS"). That process caused a slight delay in approving a Special Service Award for Tito. There is no evidence to the contrary. Docket No. 45-2 at ¶ 18. There is no evidence that Tito's age was more likely the

reason that DLA failed to increase his compensation than was the undisputed administrative delay.

In sum, the undisputed record shows that DLA had a legitimate non-discriminatory reason for not paying the Special Service Award before it did. And, Tito has offered no evidence at all that would support a finding of pretext. Accordingly, summary judgment will be granted on Tito's failure to temporarily increase salary claim.

**CONCLUSION**

For the reasons stated above, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 44) will be granted as to Counts I and II. Tito has withdrawn Count III. Hence as to Counts I and II, the DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 44) will be granted and the action will be dismissed with prejudice.

The Clerk is directed to send a copy of this Memorandum Opinion to the plaintiff.

It is so ORDERED.

/s/ REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 16, 2015